Moses A. Bledsoe as the surviving partner of a firm, Nixon and Bledsoe, sued out his writ returnable to the County Court of Wake, February Term, 1855, against the petitioner, and declared against him in assumpsit upon an account against Nixon, Snow Co. for an engine, saw-mill, c., amounting, with interest, to $4880.45, with a credit of $2637.50, which made the sum demanded $2244.95.
Jeremiah Nixon and Moses A. Bledsoe were copartners in the business of sawing lumber with a steam saw-mill, under the name of Nixon Bledsoe. In January, 1854, this firm made a sale of the mill c. to another firm, Nixon, Snow Co., composed of the said Jere. Nixon and the said Moses A. Bledsoe and the petitioner Theophilus H. Snow. Nixon died shortly after the formation of this latter firm, and the suit was brought by Bledsoe as surviving partner of Nixon Bledsoe, against Snow as one of the surviving partners of Nixon, Snow Co. for a balance due by this latter firm for the mill and fixtures.
The petitioner in his petition alleges, that early in the week of the Court at which the suit was to be tried, to wit, at May Term, it was agreed to refer the suit to E. B. Freeman, Jesse Brown, and William R. Poole; that it was further agreed that the time for the arbitrators to meet and decide the matter, should be the next Saturday after the week of the Court then sitting; that resting assured upon this agreement, he left the Court and went to his mill, some twenty miles distant, and *Page 101 
there staid during the remainder of the week; that in his absence the said Bledsoe, by misrepresentation and fraud, obtained the signatures of two of the arbitrators, Messrs. Freeman and Brown, to a statement that both parties had acknowledged the amount due to Nixon Bledsoe to be $2242.95; that the petitioner had no notice of this application to the two arbitrators, and that the third arbitrator, Poole, was not notified to attend, and in fact that the other two arbitrators did not even know that Poole was an arbitrator at all; that Mr. Freeman and Mr. Brown were both informed by Bledsoe that the matter had been arranged and settled between the parties, but that as they were named arbitrators he wished them to sign the statement as a mere matter of form; that relying on the statement of the said Bledsoe, that it was a mere matter of form, without any evidence, or seeing any vouchers, they signed the statement, and that both these gentlemen have said they did not consider themselves as making an award between the parties. The petitioner further states that Bledsoe took this pretended award to the court-house while Court was sitting, and exhibiting the same to the petitioner's counsel, told him that all had been agreedupon and settled, and that he was to take his judgment for the amountawarded, and that his counsel, misled by the names of the referees and by the assurances of the plaintiff, withdrew the pleas, and permitted judgment to go against his client. He says he did not know of this judgment until after the Court, else he would have appealed.
The petitioner further alleges that, before the death of Nixon, Bledsoe had sold out his interest in the saw-mill to Nixon, and that thereby the partnership between Nixon and Bledsoe was dissolved and terminated, and that therefore said Bledsoe has no right to sue as surviving partner. He further alleges in the petition, that in the formation of the firm of Nixon, Snow Co., he, petitioner, put in nearly as much of the stock, as Nixon and Bledsoe together; and if a fair account could be taken of the affairs of this company, it would show his liability to be much less than the sum pretended by Bledsoe to be due. *Page 102 
For these causes he prays for a certiorari to carry the case to the Superior Court of Wake.
The answer of Bledsoe denies that he ever sold out his interest in the firm of Nixon Bledsoe; that in May, 1854, he sold his interest in the firm of Nixon, Snow Co. to said Nixon, who sold a part of his interest to Eldridge Smith, and that thus the said Eldridge became a partner with the said Snow. He says, on Tuesday of May Court, finding that Smith and Snow had left town, he immediately wrote to Smith, informing him that Thursday was the day for the arbitrators to meet, and that Smith accordingly made his appearance on that day; that he presented to him the account of Nixon 
Bledsoe against Nixon, Snow Co., which was $4508.50 and interest $371.95, and requested Smith to produce the credits to which the latter firm was entitled, which he did, and having calculated interest thereon, and made the deduction. the said sum of $2242.95 was ascertained by them to be due to Bledsoe, as surviving partner of Nixon Bledsoe, and that for this amount the judgment was agreed to be taken; that he and Smith agreed to go to the arbitrators and get their signatures to this statement, which after explaining the circumstances, was obtained from them; that he then went to the counsel of Snow and showed him what had been done, and explained the same to him, and thereupon permitted him to take the judgment which is complained of. He denies emphatically that the agreement was for the arbitrators to meet and act in the matter on the Saturday after Court, but says it was the understanding between him and Snow that the arbitrators were to act that week, and that he was to have his judgment at that term. He denies all fraud, c., but says the transaction with Smith was fair and without collusion, and that he, Smith, had authority to bind the firm of which Snow was a party.
Affidavits were filed on both sides.
For defendant:
Eldridge Smith, in his affidavit says, that being informed that *Page 103 
the matter in question between Snow and Bledsoe was left to arbitration, he left for the country; that he was sent for by Bledsoe in a day or so, on account of this arbitration; that he told Snow, who was with him, that Bledsoe had sent for him; that Snow said the arbitration was not to be till the next week, and he should not go. He, Smith, went to town, and Bledsoe submitted to him a statement of the dealings between the two firms, and asked his opinion about it, he replied he thought it was correct. Bledsoe told affiant that he wished him to appear before the arbitrators; affiant asked him what for; the reply was, "I only wish you to state the amount you paid in the State Bank for me." He went with said Bledsoe before the arbitrators, and being referred to, as to the correctness of the statement produced, stated that he thought it was correct. This affiant says he was not the agent of Snow on this occasion, and did not suppose he was so regarded by either Bledsoe or the arbitrators; that he had no authority at all to bind him in this matter or to act for him. The first time he met Snow after the judgment was entered, he expressed great surprise, and repeated, that the arbitration was not to be held until the Saturday week after.
H. W. Miller stated that he was counsel for Snow in the suit above referred to; that at the trial term of the Court (May) he was informed by Bledsoe that the matter had been settled and adjusted before the arbitrators, and that the balance was so much, (stating it), and he was shown the statement signed by Messrs. Brown and Freeman, which, together with the assertion of Bledsoe, induced him to believe that the matter had been fairly heard and settled with the knowledge of his client, wherefore he made no opposition to the judgment's being taken against him.
Mr. Brown stated, Bledsoe came to him with E. Smith, and told him that he and Mr. Freeman had been appointed arbitrators to settle accounts between him and Snow, but that as the parties interested had agreed on the balance, he wished affiant to sign the statement thus agreed on. Mr. Smith assented to this statement, and as he was understood to be a *Page 104 
partner, he supposed he had power to act in the premises, and therefore signed it. Affiant was not informed that the matter was a suit pending in Court, nor was he informed that William R. Poole was also appointed an arbitrator. Affiant says he made no investigation nor enquiry into the merits of of the matter in question, but signed simply for form's sake, believing that it had been settled between the parties.
Mr. Freeman's affidavit is substantially the same as Mr. Brown's and he concludes his statement thus, "my signature having been so obtained is not my act as a referee; I never saw a voucher, heard any evidence, or passed upon any item of the account." He also supposed Smith had authority to act in the premises.
For the plaintiff:
Mr. S. H. Rogers stated that he appeared as counsel for the plaintiff in the County Court of Wake; that during the term his client came to him expressing much anxiety, and stated that he and Snow had agreed to leave their matters to arbitration; that the arbitrators were to act during the week, and he was to have judgment, for the amount they decided on, at that term; but that Snow and Smith who was interested in the matter, had both left town, and he feared he should be disappointed. He also stated, that he wished to get a judgment in order to meet one which he expected would be taken against him at the same term. On this being stated to the counsel on the other side, he understood him to say, that Bledsoe should have his judgment whether Snow came or not.
Wm. H. High says, he was sheriff of the county, and after the execution came into his hands, he heard a conversation between Snow and Bledsoe, in which Snow complained that the arbitration was to have taken place after the Court, and that he was entitled to certain credits which had not been allowed him, whereupon Bledsoe told him he should have any credit which he could show, and authorised him (High) to allow any credit on the execution which he could show.
The affidavits of Messrs. Freeman and Brown were also taken by the defendant, but are in substance as above stated. *Page 105 
On consideration of the allegations and proofs, his Honor granted the prayer of the petition, and ordered the cause to be transferred to the trial docket, from which order plaintiff appealed.
One of the purposes of the writ of certiorari is to answer as a substitute for an appeal. As the regular mode of taking cases up from a lower to a higher tribunal is by appeal, the writ of certiorari does not lie unless the party gives an explanation, or excuse, for not having appealed; otherwise the substitute would supersede the principal.
If a party prays an appeal, and the Court refuses to allow it, or if he is unable, after praying an appeal, to give security, in such cases thecertiorari is granted as "a matter of course."
But where an appeal is not prayed for, the certiorari is not a matter of course, and the Court will exercise a discretion in regard to the application. In such cases the allegations of the petition must account for the fact that an appeal had not been prayed for, and there must be an affidavit of merits to satisfy the Court that the petitioner would have prayed an appeal had he been present when judgment was rendered, and that the appeal would not have been taken for the purpose of delay, but because he believed he had a good defense.
The allegations accounting for the fact that no appeal was prayed for must be proven, but in regard to the affidavits of merits, no proof is required; for, as is said in reference to an application for the re-probate of a will, Etheridge v. Corprew, decided at this term (ante 14) "the Court cannot be expected to try a question, in order to see whether it ought to be submitted to a jury for trial." So, this averment must rest upon the affidavit of the party that he believes he has merits, setting out thefacts upon which his belief is founded.
This distinction and these general conclusions are sustained by many cases in our reports, all of which are referred to in the Digests. *Page 106 
In our case, the allegations accounting for the fact that an appeal had not been prayed for are full and satisfactory, and the proofs sustain these allegations. We have no doubt that the petitioner left Court and went home under the belief that, as the matter was referred to arbitration, no judgment would be taken at that term. We are also satisfied, that the actings and doings of the plaintiff in procuring the signatures of two of the arbitrators to a statement which he had made out, purporting to show the balance due "upon the concurrent statement of both parties," and in taking judgment upon the basis thereof, were in direct contravention of the agreement; so, there is a full and satisfactory explanation of the fact that no appeal was prayed for.
The affidavit of merits avers that the petitioner believes he has a good defense, and the matters set out as the ground of his belief show that he has, at least, probable ground, and support the conclusion that if he had been present, he would have prayed for an appeal; not for the purpose of delay, but because he wished to insist upon his defense to the action.
Upon the plaintiff's own showing, (although not now at liberty to decide the question) we may say there is much reason to doubt whether he can maintain an action at law, and whether his remedy is not by a bill in Equity, for a settlement of the several copartnerships in which the parties were interchangeably concerned.
The account stated by the plaintiff, upon which he took judgment (omitting the names of the firms) sets out a debt contracted by Jere. Nixon, Moses A. Bledsoe and Theophilus H. Snow, with Jere. Nixon and Moses A. Bledsoe. So that three persons contract a debt with two of themselves; in other words, a man contracts a debt with himself. This cannot be. According to the principles of the common law, such dealings require the intervention of a Court of Equity to do complete justice. If the original contract be not valid at law, of course an action cannot be maintained by a survivor of two against *Page 107 
a survivor of the three, although they happen to be different individuals. There is no error.
PER CURIAM. Judgment affirmed.